_Chambersburg,_
_Thursday,_
October 4.

DUNCAN and KEIFFER _against_ KEIFFER.

IN ERROR.

If a surety makes an agreement with one of two persons for whom he is bound, that if he the principal will pay one half the debt, he the surety will pay the other half for the other principal, and the one half is paid by the principal according to the agreement, the surety cannot maintain an action against both principals to recover the part that he has paid. The express agreement prevents the implication of a promise which the law would otherwise make against each principal to indemnify the surety to the whole amount that he should pay

THIS cause came before the court upon a bill of exceptions by the plaintiffs in error, who were defendants below, to the charge of the president of the Common Pleas of _Franklin_ county.

The plaintiff was bound as security for the defendants in a bond to a certain _Peter Groff_, who obtained judgment, and took him in execution upon a _ca. sa._ While in the hands of the sheriff he proposed to one of the defendants, _Duncan,_

that if he would pay one half of the debt, he the plaintiff, would pay the other half for *Keiffer* his brother, the other defendant. *Duncan* accordingly paid one half, and the plaintiff paid the residue, for the recovery of which the present action was brought.

Prior to this agreement, *Devalt Keiffer*, the defendant, had entered into an article of agreement with *Christian Keiffer* the plaintiff and two other brothers, by which he agreed to sell and convey to them certain lands at certain prices to be paid in a certain manner, i. e. 250*l.* to *D. Keiffer* senior, then they were to retain the money paid by themselves or either of them for him, or due to themselves from him, then to pay all unsatisfied judgments against him in *Franklin* county, and the overplus, if any, after paying themselves for trouble &c. to return to *D. Keiffer.*

The judge told the jury that they must first ascertain whether the plaintiff's promise to pay one half for his brother, was an absolute one, there having been some circumstances that gave it a different complexion. If absolute, then they were to consider whether he had at that time any money in his hands belonging to *Devalt Keiffer*, for if he had none, his promise was *nudum pactum.* By the article of agreement between the *Keiffers*, the money arising from the sale of the lands was specially appropriated; it was trust money, if any, in the hands of the three *Keiffers;* and *Christian's* right to call upon the defendants could not be annulled, and the trust defeated, by treating it as money in his hands alone. If there was any money due to *Devalt Keiffer*, it was due by all the trustees; and it could not be set off in this suit by *Christian* alone, against *D. Keiffer* and another; it therefore was not a sufficient consideration for the promise of the plaintiff, and should have no weight, whatever might be the amount of it. The defendants excepted to the charge, and the jury found a verdict for the plaintiff.

*J. Riddle* and *Duncan*, for the plaintiffs in error, argued, that the question had been put to the jury, partly upon an irrelevant and partly upon an erroneous point. The question was not whether *nudum pactum* or otherwise, for that question never arises where there is a performance, and here

the plaintiff had performed the promise to pay one half for his brother; but it was whether the plaintiff could maintain the suit upon an implied assumpsit by *Duncan*, when he had made an express contract with *Duncan* upon the same matter, before he had paid any money, and of course before the law had raised any promise by implication. *Expressum facit cessare tacitum.* The law could not imply a promise by *Duncan* to pay *Keiffer* the whole, when *Keiffer* had made an express agreement with him to pay half, before as yet *Duncan* was bound to pay any thing. But the judge was wrong in saying that the amount of *Devalt Keiffer's* money in the hands of *Christian* and his brothers should have no weight. Surely if there had been enough to pay all *Devalt's* debts including this, it would have been a sufficient consideration for *Christian's* assuming to pay his brother's debt.

*Orbeson* and *Dunlop* for defendant in error. At the time of *Keiffer's* paying the moiety, *Duncan* was bound to pay the whole to *Groff*, and therefore his promise to pay half was a nullity. If at that time there had been no obligation by *Duncan*, the argument might have some force, that the express agreement superseded an implied one; but there was then an obligation to the whole extent of the debt, and a promise to meet part of it was of course idle. The question was then whether there was any consideration for promising to pay *Devalt's* moiety; for if there was not, *Christian* must be considered as paying for himself as surety, and not for his brother as principal, which leaves him in possession of all his remedies against both principals. Now there surely was no consideration. The circumstance of being a brother is nothing; and as to the trust money, whatever might have been its amount, *Christian Keiffer* had no right to apply any part of it in discharge of *Devalt's* debts paid by himself alone after the date of the articles of agreement; of course that money was not a consideration.

TILGHMAN C. J. delivered the court's opinion.

The plaintiff was bound as security for the defendants in a bond to *Peter Groff*. He was sued on this bond, judgment obtained against him, and a *ca. sa.* issued on which he was

arrested. While in custody of the sheriff under this arrest, it was agreed between the plaintiff and *M. Duncan* one of the defendants, that *Duncan* should pay half of the debt, and the plaintiff should pay the other half for *Devalt Keiffer* the other defendant, who was his brother. After this agreement *Duncan* did pay his half, and the plaintiff paid the other half. The question is, whether *Duncan* is liable for any part of the money so paid by the plaintiff.

If no agreement had taken place, the law would have implied a promise from both defendants to reimburse the plaintiff for all money paid by him on account of this bond. But before he paid any thing, he made the agreement, which leaves no room for the implication which the law would otherwise have made. It is said that the agreement is *nudum pactum*, because the plaintiff received no consideration. But the question is not whether the plaintiff could have been compelled to pay the one half of this debt for his brother. He has actually paid it, and now comes to recover it back from the defendants contrary to his agreement. This he cannot do. There was nothing hard or improper in the agreement. It placed the two defendants on the footing on which in equity they ought to stand with respect to each other, that is to say, each to pay half. And no one can say whether in consequence of this agreement, *Duncan* may not have made greater exertions to pay his half, and made the payment quicker than he otherwise would have done; for it is to be observed, that at the time of making the agreement, the plaintiff, having paid no money, could not have supported an action for money paid on account of the defendants.

The case is very much strengthened on the part of *Duncan*, from the circumstance of the estate of *Devalt Keiffer* having been assigned to the plaintiff and his two other brothers, for the purpose of paying his debts. It is true, it was appropriated in the first instance to the payment of certain debts, of which that in question was not one. But the surplus, if any, was to be restored to *Devalt*, nor do we know whether or not there was a surplus. If I understand the opinion of the court of Common Pleas, it was that this consideration should have no weight, whatever might be the amount of the property of *Devalt Keiffer* in the hands of his

1810.

DUNCAN
*v.*
KEIFFER.

brothers. In this I think they were wrong; for although such matter might not be a subject of *set-off* against the plaintiff, yet certainly it would afford good ground for the plaintiff's assumption to pay his brother's debt.

On the whole we are of opinion that the judgment of the court of Common Pleas was erroneous and should be reversed. A *venire facias de novo* is awarded.

Judgment reversed, and
*Venire de novo.*